IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

MICHAEL D. WILLIAMS,        )   CIVIL ACTION NO. 9:15-2195-PMD-BM
                              )
          Plaintiff,     )
                              )
v.                          )   **REPORT AND RECOMMENDATION**
                              )
CAROLYN W. COLVIN,         )
COMMISSIONER OF SOCIAL     )
SECURITY ADMINISTRATION,   )
                              )
         Defendant.     )
_____)

The Plaintiff filed the Complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was awarded Disability Insurance Benefits (DIB) for the period of August 26, 2010 through June 7, 2013, but was determined to not be disabled (and therefore no longer eligible for DIB) as of June 8, 2013. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for DIB on April 4, 2011, alleging disability as of April 16, 2008 due to right and left shoulder injuries. (R.pp. 36, 67, 77, 241-245). Plaintiff's claim was denied both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on April 16, 2013. (R.pp. 51-66). Shortly before the hearing, Plaintiff amended his alleged disability onset date to August 26, 2010 (his 50th birthday). (R.p. 258). After the conclusion of this hearing, Plaintiff had a consultative examination performed, following which



a supplemental hearing was held on December 9, 2013. (R.pp. 33-50). The ALJ thereafter issued a partially favorable decision on December 30, 2013 finding that Plaintiff was disabled from August 26, 2010 through June 7, 2013, but that medical improvement occurred as of June 8, 2013, at which time Plaintiff's disability ended. (R.pp. 17-27). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-4).

Plaintiff then filed this action in this United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision that he was no longer disabled as of June 8, 2013 due to medical improvement, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits for the period after June 7, 2013. The Commissioner contends that the ALJ's decision is supported by substantial evidence, and that Plaintiff was properly found not to be disabled after June 7, 2013.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to**



**direct a verdict were the case before a jury, then there is "substantial evidence."**
[emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642.  "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

<u>Discussion</u>

A review of the record shows that Plaintiff, who turned fifty (50) years old on his amended disability onset date of August 26, 2010, has a high school education with some college, and previous work activity as an army air traffic controller, a cable contractor, and a machine operator for a paper factory and printing company.  (R.pp. 36, 55-57.  In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months.

After a review of the evidence and testimony in the case, the ALJ determined that Plaintiff suffers from the "severe" impairments[1] of residuals from bi-lateral shoulder injuries with surgical repair and degenerative disc disease, and that from August 26, 2010 through June 7, 2013

---

[1]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).



Plaintiff's impairments limited him to the residual functional capacity (RFC) for sedentary work.[2] The ALJ further determined that, as Plaintiff was classified as an individual closely approaching advanced age as of August 26, 2010, and as he was unable to perform his past relevant work (which was classified as medium work),[3] Plaintiff's limitation to an RFC for sedentary work rendered him disabled. (R.pp. 20-21, 23-24). However, the ALJ also found that by June 8, 2013, Plaintiff's condition had improved such that he had the RFC to perform medium work. As Plaintiff was capable of performing his past relevant work as a press machine operator with this RFC, the ALJ concluded that he was therefore no longer entitled to disability benefits after June 7, 2013. (R.pp. 24-26).

Plaintiff asserts that in reaching this decision the ALJ erred by finding that medical improved had occurred as of June 8, 2013, because the consultative examination performed after the first hearing "is unreliable and does not constitute substantial evidence", and that even if accurate it does not support a finding of medical improvement. Plaintiff further argues that the ALJ erred by failing to consider all of his impairments in finding that his work capacity had increased, and failed to properly consider the opinion evidence of Dr. Robert Wyker and Dr. Rebekah Wu. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds for the reasons set forth hereinbelow that the decision to deny benefits after July 7, 2013 is supported

---

[2]Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).

[3]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).



by substantial evidence as that term is defined in the relevant case law, and that the decision should therefore be affirmed.  Laws, 368 F.2d at 642 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

The medical evidence confirms that Plaintiff injured his right shoulder in April 2008, which lead to arthroscopy surgery in August 2008.  (R.pp. 371, 507-508).  Plaintiff thereafter underwent an additional right shoulder arthroscopy with rotator cuff repair in April 2009.  (R.pp. 509-510).  Plaintiff's medical records further show that he sustained a tear of a rotator cuff tendon in his left shoulder around May 2009, which resulted in him undergoing a left shoulder arthroscopy and rotator cuff repair in November 2009.  (R.pp. 404, 511-512).  Following Plaintiff's surgeries, he underwent physical therapy with mixed results.  (R.pp. 430-505, 544-566).

Plaintiff's left shoulder was evaluated by Dr. Wyker on September 1, 2010.[4]  X-rays taken at that time did not reflect any significant problems, and it was noted that Plaintiff had only been taking Ibuprofen for pain.  Plaintiff complained of pain mainly when he tried to move his arm, and Dr. Wyker concluded that examination results were most consistent with adhesive capsulitis status post surgery on Plaintiff's left shoulder.  Dr. Wyker recommended that Plaintiff have a repeat arthoroscopy to look at the labrum and release the scar tissue, with Plaintiff to then resume physical therapy.  He estimated Plaintiff's recovery period from this surgery would be from four to six months, by which time Plaintiff would probably have achieved maximum medical improvement (MMI).  (R.pp. 345-346).  However, although Plaintiff continued to thereafter receive treatment and evaluations for his shoulders, there is no evidence that he ever underwent any additional surgery.

---

[4]Although Dr. Wyker's case notes reflect that Plaintiff also complained during this visit that his right shoulder was continuing to give him discomfort, Dr. Wyker indicated that he was "only authorized to see him for the left one today".  (R.p. 345).



In addition to his shoulder complaints, in July 2011, Plaintiff also began complaining of back pain. X-rays of Plaintiff's thoracic and lumbar spine taken at that time were unremarkable, while x-rays of Plaintiff's cervical spine showed mild degenerative changes at C5-C6. (R.pp. 643-645). Subsequent examinations were essentially unremarkable, with only mildly decreased range of motion in Plaintiff's trunk and tenderness to palpation being noted. See generally, (R.pp. 671, 673-674, 678-680, 683, 685, 700, 713-715, 739-741, 745-756).

Plaintiff was seen again by Dr. Wyker on February 23, 2012, this time for a right shoulder opinion. Plaintiff was still complaining of shoulder pain, and told Dr. Wyker that although his left shoulder tended to bother him more than the right, his right shoulder did also give him a lot of discomfort and pain. Dr. Wyker noted the results of x-rays, which showed Plaintiff's past shoulder surgeries and which were generally unremarkable, and on examination Plaintiff's reflexes seemed to be symmetrical in both upper extremities. Plaintiff's rotator cuff strength showed some weakness and pain when tested, and Dr. Wyker's impression was persistent pain in the right shoulder, status post a fall with two surgeries. Dr. Wyker believed that Plaintiff's best option was non-operative, and that he should be doing physical therapy on his own. Dr. Wyker assigned Plaintiff a 15% functional impairment of his right upper extremity and opined that, basically since both of his shoulders were involved, Plaintiff would be restricted to predominantly a sedentary job with no significant lifting with his arms and no real use of the arms at shoulder level or above. (R.pp. 657-658).

As for Plaintiff's back complaints, the evidence reflects that he underwent a lumbar spine MRI in March 2013, which revealed only mild facet degenerative changes at L4-L5 and L5-S1 with no canal or foramen stenosis. (R.pp. 775-776). Dr. Wu, Plaintiff's primary care physician,



opined that Plaintiff's MRI was "essentially normal", and he was advised to continue with physical therapy.  (R.p. 789).

The ALJ noted the medical evidence detailing Plaintiff's complaints and objective findings in his decision and, consistent with Dr. Wyker's February 2012 opinion, found that these aliments restricted Plaintiff to performing only sedentary work through June 7, 2013.  See generally, (R.pp. 21-23).  Neither Plaintiff nor the Defendant contest this finding, and as Plaintiff had attained the age of fifty on his alleged disability onset date of August 26, 2010, this restriction to sedentary work entitled him to DIB under Medical-Vocational Guideline Rule 201.14.  See (R.pp. 23-24); see also 20 C.F.R. § 404.1520(g), § 404.1560(c), § 404.1563, § 404.1566.  However, the ALJ further determined that, by June 8, 2013, the evidence showed that Plaintiff's condition had improved such that he had the RFC to perform medium work, and that consequently he was no longer disabled by that date.  See Martz v. Commissioner, No. 14-15027, 2016 WL 2909201, at * 5 (11th Cir. May 19, 2016) ["A claimant's entitlement to disability benefits ends when the claimant's medical condition improves sufficiently to permit [him] to engage in substantial gainful activity]; see also 42 U.S.C. § 423(f).  In making this finding, the ALJ followed the eight step medical improvement evaluation process set forth in 20 C.F.R. § 404.1594(f).[5]

_____

[5]The Social Security Act normally provides for a five-step sequential process to determine if a claimant has a disability: 1) whether the claimant is engaged in substantial gainful activity; 2) whether the claimant has a severe impairment; 3) whether the claimant has an impairment which equals an impairment contained in the Listings of Impairments; 4) whether the impairment prevents the claimant from performing his or her past relevant work; and 5) whether the impairment prevents the claimant from doing any substantial gainful employment.  20 C.F.R. § 404.1520.  The ALJ followed this process in determining that Plaintiff was disabled through June 7, 2013.  (R.pp. 18-19).  However, when determining whether a claimant who has previously been found to be disabled continues to be disabled, the ALJ is required to apply the eight-step sequential evaluation process referenced hereinabove.  This eight-step process provides: (1) if the claimant is currently engaging
(continued...)



In concluding that Plaintiff had medical improvement[6] as of June 8, 2013 such that he was no longer disabled, the ALJ observed that Plaintiff had had very little treatment for his shoulder complaints after February 2012, and that by March 2013 (over a year after Dr. Wyker's "sedentary work" opinion) an examination of Plaintiff's shoulder was unremarkable. (R.p. 22); see (R.pp. 728-729). The ALJ also noted that when Plaintiff underwent a consultative examination for evaluation of his condition on June 8, 2013, the examining physician Dr. Anand Panchal found that Plaintiff's back and shoulder impairments no longer caused him any significant limitation, and opined that Plaintiff could do medium work with some minimal manipulative, environmental and postural limitations. (R.p. 24). See Richardson v Perales, 402, U.S. 389, 408 (1971)[assessment of examining physicians may constitute substantial evidence in support of a finding of non-disability].

---

[5](...continued)
in substantial gainful activity, disability ends; (2) if the claimant has an impairment or combination of impairments that meets or medically equals a listing, disability continues; (3) if the claimant does not meet or equal a listing, the ALJ will determine whether "medical improvement" has occurred; (4) if medical improvement has occurred, the ALJ will determine whether the improvement is related to the claimant's ability to work; (5) if there is no medical improvement—or the medical improvement is found to be unrelated to the claimant's ability to work—disability continues; (6) if there has been medical improvement related to the claimant's ability to work, the ALJ will determine whether all of the current impairments, in combination, are "severe," and if not, disability ends; (7) if the claimant's impairments are considered "severe," the ALJ will determine the claimant's RFC, and if the claimant is able to perform past relevant work, disability ends; (8) if the claimant remains unable to perform past relevant work, the ALJ will determine whether the claimant can perform other work that exists in the national economy given his or her residual functional capacity, age, education, and past relevant work experience. See 20 C.F.R. § 404.1594(f)(1)-(8). The ALJ followed this process in determining that Plaintiff was no longer disabled as of June 8, 2013. (R.pp. 19-20).

[6]Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled ..." 20 C.F.R. § 404.1594(b)(1). Such a finding must be based on "changes (improvement) in the symptoms, signs and/or laboratory findings associated with the impairments." Id. To determine whether medical improvement has occurred, the severity of the claimant's current medical condition is compared to the severity of the condition "at the time of the most recent favorable medical decision that [the claimant was] disabled." Id.



In reaching this conclusion, Dr. Panchal noted that on examination Plaintiff had no more than mild limitations in his neck or shoulder range of motion. (R.pp. 750, 752-753). Nor did he find that Plaintiff had any significant range of motion limitation in his back. (R.p. 752).

Dr. Panchal's examination further revealed that Plaintiff had a steady non-antalgic gait; he had normal muscle tone and bulk; his deltoid (shoulder) muscle strength was nearly full, with all other muscle groups (including biceps, triceps, hip and leg) being normal; Plaintiff's straight leg test was negative bilaterally; Plaintiff was able to lift, carry and handle light objects; he was able to squat and rise from that position with ease; he was able to rise from a sitting position without assistance and had no difficulty getting up and down from the examination table; he was able to walk on his heels and toes; tandem walking was normal and Plaintiff could hop on one foot bilaterally; and he could pinch, grasp and manipulate small and large objects without difficulty. Dr. Panchal opined that Plaintiff's examination findings were consistent with only mild bilateral shoulder weakness and loss of motion, while noting that his neurovascular exam was normal and that overall he had only a mild impairment in lifting/carrying heavy objects, with no impairment in sitting, standing, walking, lifting/carrying light objects, stooping, kneeling, crouching or crawling. (R.pp. 750-753). In a separately completed RFC report, Dr. Panchal opined that Plaintiff had the lifting/carrying capacity for medium work, could sit for up to eight hours in an eight hour work day, stand for up to four hours, and walk for up to four hours, and could frequently climb stairs/ramps/ladders/scaffolds, and continuously engage in other postural activities. See generally, (R.pp. 754-759).

In addition to noting Dr. Panchal's findings in his decision, the ALJ observed that early 2013 lumbar examinations had also showed that Plaintiff had a non-antalgic gait, was able to



walk on his heels and toes, and that straight leg raise testing was negative, all findings consistent with those of Dr. Panchal. (R.p. 23); see (R.pp. 791-792). Additionally, and as further support for his finding that Plaintiff's functional capacity for basic work activities had increased by June 8, 2013, the ALJ noted that subsequent medical records confirmed that Plaintiff had only slight lack of strength in his shoulders bilaterally, while nerve conduction studies and MRI's after July 2013 revealed no evidence of radiculopathy or myelopathy and only moderate central canal stenosis at C5-C6, with no other significant findings. (R.p. 25); see (R.pp. 795-796, 798-799, 828, 837-839).

This evidence, in conjunction with Plaintiff's most recent physical examination findings where he had no complaints of neck pain and full range of cervical motion in all planes, led the ALJ to conclude that, since June 8, 2013, Plaintiff had only mild loss of strength and range of motion in his shoulders bilaterally with no observable limitations as a result of his neck or back pain, and that Plaintiff therefore had achieved medical improvement with an RFC for medium work by that date. (R.p. 25). While the Plaintiff obviously disagrees with this decision, the undersigned can discern no reversible error in the ALJ's analysis and findings. Thomas v. Celebreeze, 331 F.2d 541, 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; see also Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].

In arguing for a reversal of the decision, Plaintiff complains that the ALJ erred by adopting the consultative examiner's findings that Plaintiff was capable of medium work because Dr. Panchal's report "misrepresented both test results and the tests actually performed and is therefore invalid". This argument is based on Plaintiff's testimony at the hearing of December 9, 2013 (responding to questions from his attorney) that he was unable to perform some of the



examination exercises Dr. Panchal asked him to perform (such as squatting and tandem walking) while Dr. Panchal did not actually perform some of the other tests indicated in his report. See (R.pp. 38-39). However, the ALJ found that, while Plaintiff alleged that Dr. Panchal did not perform a thorough examination, there was "no objective evidence showing Dr. Panchal did not perform an adequate examination", with the ALJ describing Dr. Panchal's report as "one of the most thorough I have ever encountered". (R.p. 25). Cf. Amberg v. Astrue, No. 08-967, 2010 WL 2595218, at * 5 (N.D.N.Y. May 24, 2010) [ALJ did not err in relying on consultative examiner's opinion where there was no evidence substantiating allegations that the examination was not of proper duration], adopted by 2010 WL 259510 (N.D.N.Y. June 23, 2010); see also Jones v. Chater, No. 95-5242, 1996 WL 494312, at * 2 (10th Cir. Aug. 29, 1996) [Finding that argument that examiner's report was incomplete and defective was without merit where the findings in the report contradicted claim]; Ables v. Astrue, No. 10–3203, 2012 WL 967355, at *11 (D.S.C. Mar. 21, 2012) ["Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant."](citing SSR 96-7p); Bowen, 482 U.S. at 146 [Plaintiff has the burden to show that he has a disabling impairment].

　　　　　As Dr. Panchal's report and findings meet the requirements for consideration as a valid report, Plaintiff's own lay opinion that the examination was not performed properly is not grounds for reversal of the decision. Cf. 20 C.F.R. § 404.1519n; see also Bradbury v. Astrue, No. 10-5272, 2011 WL 642996, at * 8 (W.D.Wa. Feb. 17, 2011) [Noting that Plaintiff was not a medical expert and his interpretation of medical findings and results could not take precedence over the opinion of qualified medical sources]. Cf. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993)[ALJ



may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; see also Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"].

As for Plaintiff's remaining arguments, his claim that the medical evidence does not reflect a significant improvement in his condition is without merit.  In addition to Dr. Panchal's report and findings certainly reflecting an improvement in Plaintiff's shoulder range of motion from Dr. Wyker's reports of September 2010 and February 2012, his strength testing failed to reveal the marked shoulder weakness and muscle spasms cited in Plaintiff's examination in October 2011.  Cf. (R.pp. 22, 24, 345, 654-656, 683, 751-753, 792).  As noted, the ALJ also cited as evidence of medical improvement, the fact that Plaintiff failed to seek treatment for his shoulder problems after early 2012, indicating that his pain was not as severe as alleged.  (R.p. 25); cf. Ledford v. Astrue, No. 07-1148, 2008 WL 4372778, at * 8 (D.S.C. Sept. 18, 2008) [ALJ's finding of medical improvement supported by lack of treatment for allegedly disabling impairment]; Mickles v. Shalala, 29 F.3d 930 (4th Cir. 1994) [Lack of treatment inconsistent with complaints of disabling symptoms].

Plaintiff's complaints about the ALJ's treatment of the opinions from Dr. Wyker and Dr. Wu are similarly unavailing.  While Plaintiff complains that the ALJ failed to provide good reasons for not giving appropriate weight to Dr. Wyker's opinion from 2012 that Plaintiff was limited to sedentary work, a review of the decision shows that the ALJ in fact gave this opinion "great weight".  (R.p. 26).  The evidence the ALJ relies on for his finding of medical improvement in Plaintiff's condition is from 2013, most of which is from well over a year *after* Dr. Wyker's February 2012 opinion limiting Plaintiff to sedentary work.  There is no error apparent in the ALJ's



evaluation of this evidence.  Poling v. Halter, No. 00-40, 2001 WL 34630642, at * 7 (N.D.W.Va. Mar. 29, 2001)["It is the duty of the ALJ, rather than the reviewing court, to assess the evidence of record and draw inferences therefrom"].

        As for Dr. Wu (Plaintiff's primary care physician), the ALJ correctly noted that an opinion she issued in June 2013 that Plaintiff's medical impairments limited him to sedentary work was clearly based on Dr. Wyker's February 2012 opinion.  See (R.p. 760).  As such, the ALJ gave "great weight" to that opinion, but again only for the time period prior to June 8, 2013.  (R.p. 26). As for a later statement signed by Dr. Wu in December 2013 stating that Plaintiff had limited ability to stand for long periods of time based on a nerve conduction study and a cervical spine MRI from November 2013 (R.p. 832), the ALJ gave little weight to that opinion (which was based on Dr. Wu's conclusion that the results shown on those studies "can cause" significant pain) because Plaintiff had had very few complaints of neck pain and indeed had not reported having any neck pain during the consultative examination only a few months earlier.  (R.p. 26).  See also Cruse v. Bowen, 867 F.2d 1183, 1186 (8[h] Cir. 1989)["The mere fact that working may cause pain or discomfort does not mandate a finding of disability].  Further, the ALJ had already noted the results of those studies as *support* for his finding of medical improvement, as they revealed no evidence of radiculapathy or myelopathy and no other significant findings other than moderate central canal stenosis at C5-C6, coupled with the fact that Plaintiff continued to have a normal gait, no complaints of neck pain, full range of cervical motion in all planes, and only slight lack of strength in his shoulders bilaterally. (R.p. 25).

        Again, while Plaintiff disagrees with the findings and conclusions of the ALJ, he has established no reversible error in the ALJ's evaluation of this evidence.  Guthrie v. Astrue, No. 10-



858, 2011 WL 7583572, at * 3 (S.D.Ohio Nov. 15, 2011), <u>adopted by</u>, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]; <u>Kellough v. Heckler</u>, 785 F.2d 1147, 1149 (4th Cir. 1986) ["If the [Commissioner's] dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)]. Therefore, these arguments are without merit.

### Conclusion

Substantial evidence is defined as "... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir.1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. <u>Blalock</u>, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was no longer disabled within the meaning of the Social Security Act as of June 8, 2013. Therefore, it is recommended that the decision of the Commissioner be affirmed.

The parties are referred to the notice page attached hereto.

_____
June 10, 2016                         Bristow Marchant
Charleston, South Carolina     United States Magistrate Judge

14



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

